IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VERONIQUE A. LONGMIRE and LAURA BARBER,
on behalf of themselves and others similarly situated,

        Plaintiffs,

v.                                       No.  CIV-03-1404 WPJ/RLP

REGENTS OF THE UNIVERSITY OF CALIFORNIA,
d/b/a LOS ALAMOS NATIONAL LABORATORY,

        Defendants.

*consolidated with*

YOLANDA GARCIA, et al.

        Plaintiffs,

v.                                       No.  CIV-04-0112 WPJ/RLP

REGENTS OF THE UNIVERSITY OF CALIFORNIA,
et al.,

        Defendants.

## JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND MEMORANDUM OF LAW IN SUPPORT

Plaintiffs and Class Representatives Laura Barber, Yolanda Garcia, Loyda Martinez, Gloria Bennett and Yvonne Ebelacker, Hispanic Roundtable of New Mexico, and University Professional and Technical Employees CWA 9119 (AFL-CIO) (collectively "Class Representatives") and Defendants G. Peter Nanos ("Nanos") and the Regents of the University of California ("Regents")(all of whom are collectively referred to herein as the "Parties"), by and through their respective counsel, jointly move the Court to grant final approval of the Parties' settlement of these two consolidated class action lawsuits (the "Consolidated Actions").   As

grounds for this Motion, the Parties state as follows:

## I. BACKGROUND AND SUMMARY

The Complaints in the Consolidated Actions allege that the Regents discriminated against female and Hispanic employees at Los Alamos National Laboratory ("LANL") in the areas of salaries, raises, promotions and other employment-related actions. *See, e.g., Barber* Compl. ¶¶ 13, 29; *Garcia* Am. Compl. ¶¶ 11, 19-24. Plaintiffs allege that the pay disparities and disparate treatment at LANL are longstanding, widespread through many divisions, and affected thousands of female and Hispanic employees. *See, e.g., Barber* Compl. ¶¶ 14, 15, 18-20, 31; *Garcia* Amended Compl. ¶¶ 19-27.

The Defendants deny the claims in the Consolidated Actions. The Defendants contend that at all times material the Regents had in place policies prohibiting discrimination in pay and other terms of employment and that any disparities in pay, promotions or educational opportunities at LANL were the result of legitimate business factors unrelated to sex or race. *See* Answer to *Garcia* Am. Compl. ¶¶ 54, 71. Nonetheless, the Defendants consider it desirable and in their interests that these Consolidated Actions be dismissed on the terms set forth in the Settlement Agreement in order to avoid further expense, inconvenience, and distraction and to avoid protracted litigation. By entering into the Settlement Agreement and taking actions pursuant to it, the Parties do not concede that any of the allegations, claims or defenses in the Consolidated Actions have merit.

After four separate mediations, and many hours of negotiations directly between counsel, the Parties agreed to settle these cases. On June 1, 2006, this Court entered an Order certifying the class, appointing the Class Representatives, appointing Class Counsel, and granting preliminary approval of the Parties' Settlement Agreement. After obtaining the Court's

2

preliminary approval, the Parties appointed a Claims Administrator who has carried out the claims administration process in accordance with the Settlement Agreement and the Court's June 1, 2006 Order.  Thus, the Parties now seek the Court's final approval of their settlement so that the Claims Administrator may distribute the settlement funds to Class members in accordance with the Settlement Allocation Plan.

The Parties have also recently completed an arbitration to determine the reasonable amount of Plaintiffs' attorneys' fees and costs to be paid by Defendants pursuant to the Parties' Settlement Agreement, in addition to the amount paid by Defendants to the Class members. Plaintiffs have filed separately a memorandum in support of confirmation of the arbitrators' award of attorneys' fees and costs.  The Parties will request that the Court consider both this Motion for Final Approval and the memorandum in support of confirmation of the arbitrators' award at the June 27, 2007 final fairness hearing.

In accordance with this Motion for Final Approval, then, the Parties request that Court enter an Order:

1.     Holding that the Notice of Class Action and Summary Notice were disseminated as required by the Court and that the notices fully and accurately informed Class members of all material elements of the proposed settlement, constituted the best notice practicable under the circumstances, constituted valid and sufficient notice to all Class members, and fully complied with Fed.R.Civ.P. 23 and the requirements of due process;

2.     Adopting the terms of the Settlement Agreement and holding, pursuant to Fed.R.Civ.P. 23(e), that the terms of the Settlement Agreement, including the terms of the Settlement Allocation Plan are fair, reasonable and adequate in all respects;

3.     Approving payment by Defendants of Plaintiffs' reasonable attorneys' fees and costs;

4.     Holding that neither the Court's Order nor the Settlement Agreement constitutes a finding or admission by Defendants of any liability or wrongdoing whatsoever;

3

5. Overruling all remaining objections to the Settlement Agreement;

6. Dismissing on the merits and with prejudice the claims asserted by the Class in the Consolidated Actions, provided that the Court does not dismiss Plaintiff Veronique Longmire's individual claims which will remain pending in this court under this cause number;

7. Ordering that all those to whom the Notice of Class Action was directed and who have not timely and validly opted out of the Class are deemed to have released and forever discharged the Released Parties from all the Released Claims as set forth in the Settlement Agreement and will forever be barred and enjoined from asserting, instituting, or prosecuting in any capacity, in any forum, any action or proceeding against the Released Parties concerning the Released Claims;

8. Ordering that no person may assert any claim against the Class Representatives, Class Counsel, or Claims Administrator based on the distribution of the Settlement Fund made substantially in accordance with the Settlement Agreement and/or the Orders of the Court; and

9. Ordering that the Court retains continuing jurisdiction of the Class claims for the purposes of supervising the claims administration.

## II. FACTUAL BACKGROUND RELEVANT TO FINAL APPROVAL

### A.    <u>History of This Litigation</u>

On December 10, 2003, Laura Barber and Veronique Longmire filed a lawsuit against the Regents captioned *Longmire v. Regents of the University of California*, No. CIV-03-1404 WPJ/RLP (D.N.M.) (the "*Barber* Action"). The *Barber* Action was brought on behalf of Longmire, Barber, and all other similarly situated female employees working for the Regents at LANL and alleges violations of the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA") and breach of contract. The *Barber* Action seeks monetary damages and injunctive relief.[1]

On January 6, 2004, Yolanda Garcia, Loyda Martinez, Gloria A. Bennett, Yvonne Ebelacker, Hispanic Roundtable of New Mexico, and University Professional & Technical Employees CWA 9119 (AFL-CIO) (the "*Garcia* Plaintiffs") commenced a lawsuit, No. D-117-

---

[1] Plaintiff Veronique Longmire is not a party to the Settlement Agreement or this Motion. In fact, Ms. Longmire has chosen to opt out of the settlement and presumably intends to pursue her individual claims against the Regents.

4

CV-200400001, against the Regents and Nanos in the state district court in and for Rio Arriba County, New Mexico (the "*Garcia* Action"). The Complaint in the *Garcia* Action, brought on behalf of the *Garcia* Plaintiffs and all other similarly situated female employees and Hispanic employees working for the Regents at LANL, alleged violations of the EPA, 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New Mexico Human Rights Act, as amended, NMSA 1978, §§ 28-1-1 *et seq.* (the "NMHRA") and breach of contract. The *Garcia* Action also seeks monetary and injunctive relief. The *Garcia* Action was removed to the United States District Court for the District of New Mexico, where it was assigned Docket No. CIV 04-0112 WPJ/RLP, transferred to the District Judge hearing the *Barber* Action, and consolidated with the *Barber* Action.

From May 2004 until early 2005, the Parties engaged in discovery, including interrogatories, requests for production, and depositions. The Regents produced thousands of pages of documents and computer files, including but not limited to documents regarding the Regents' performance and salary management systems, records of employment, salary actions, promotions of putative class members, and prior studies of compensation for employees at LANL. The Regents deposed some of the Class Representatives and several other witnesses and filed a motion to dismiss specific claims in the Complaints.

On January 4, 2005, pursuant to the Defendants' motion to dismiss, the District Court dismissed with prejudice the *Garcia* Plaintiffs' claim under 42 U.S.C. § 1981 in its entirety, their claim under 42 U.S.C. § 1983 against the Regents only, and their Title VII claim against Nanos only.

Each side retained reputable experts to analyze the Regents' salary data and compensation policies. Plaintiffs' expert statistician, Dr. Janice Madden, developed a model of

5

LANL's salary decision-making process that was based upon her regression analysis of LANL's salary data. Dr. Madden's model suggested there were widespread statistically significant salary differences at LANL that cannot be explained using the legitimate factors reflected in her model. Plaintiffs' performance and salary management expert, Dr. Frank Landy, provided Plaintiffs' counsel with an analysis of LANL's compensation policies and practices and with suggestions for improving those policies and practices – information Class Counsel contend they used to guide their negotiations regarding the injunctive relief contained in the Settlement Agreement.

The Regents' expert statistician, Dr. Joan Haworth, developed a different model of salary decisions at LANL that was based on different variables than those used by Dr. Madden. Dr. Haworth's model suggested that statistically significant salary differences existed in only a few, isolated divisions of LANL. The Defendants developed anecdotal evidence that they contend explains the few statistically significant pay differences identified in Dr. Haworth's analysis. Thus, each side developed a sophisticated statistical model based on regression analyses that resulted in nearly polar opposite conclusions about the nature and extent of discrimination in pay and promotions at LANL.

In early 2005, the Parties agreed to enter into settlement discussions. They engaged in mediation utilizing Antonio C. Piazza, of Gregorio, Haldeman, Piazza, Rotman & Frank, San Francisco, California, as mediator, and later, Paul Bardacke of Sutin Thayer & Browne, Albuquerque, New Mexico. Ex. 1, Affidavit of Attorney Patrick D. Allen; Ex. 2, Affidavit of Attorney John C. Bienvenu (previously filed as Ex. 1 and Ex. 2, respectively, to Plaintiffs' Response in Opposition to Objections of Laurie Quon [doc. 224], filed March 19, 2007). Additionally, the Parties' counsel engaged in several unmediated meetings to further negotiate the terms of an agreement. Arms-length settlement negotiations continued through April 2006

6

when the Settlement Agreement was finally reached. Ex. 1; Ex. 2.

**B.      The Settlement Terms**

Under the Settlement Agreement, the Parties have agreed that the Regents will pay $12 million (the "Settlement Fund") in compensation for the Class as that term is defined in the Settlement Agreement, plus an additional, separate amount for Plaintiffs' attorneys' fees and costs.   The Regents agreed to provide certain injunctive relief for the Class until May 31, 2006, or such time as a new contracting entity took over operation of LANL, which occurred on June 1, 2006.   The Settlement Agreement also provides for payment from the Settlement Fund of incentive compensation for each Class Representative, as well as for Settlement Class members who prior to December 20, 2005 filed in this Court consent forms to join the EPA collective action ("Consent Plaintiffs").   The settlement will constitute a full and complete adjudication of the claims, rights and obligations of the Parties and the Class with respect to the matters alleged in the Consolidated Actions and as further set forth in the "Released Claims" provision of the Settlement Agreement.   The Parties have crafted a fair, reasonable and adequate settlement of the claims at issue in this case, and one that warrants the Court's final approval.

The terms of the settlement are fully described in the Settlement Agreement, and are summarized as follows.

*1.       Monetary Relief to Settlement Class Members*

**a.       Payments to the Settlement Class**

The Settlement Agreement provides that the Claims Administrator will pay out of the Settlement Fund to each Settlement Class member who submits a valid and timely Claim Form a Settlement Payment calculated for that Settlement Class member under the Settlement Allocation Plan.   The calculation incorporates certain aspects of the economic analysis of Plaintiffs' expert,

Dr. Janice Madden. Each Settlement Payment is, in part, a payment in respect of claims for back pay and, in part, a payment in respect of claims for compensatory damages. As of the date of this Motion, approximately 3,100 individuals have filed Claim Forms (Class members will have until 30 days after the Final Approval Hearing to submit Claim Forms). Based on the number of Claim Forms submitted to date, the fact that no more than a handful of Claim Forms have been submitted over the past six months, and the Parties' expectation that some of the Claim Forms will be rejected by the Claims Administrator as invalid, the Parties believe it is reasonable to assume that no more than 3,100 Claimants will actually participate in the settlement. Assuming up to 3,100 Class members, Class Counsel anticipate that the gross payout to each Claimant will be in the approximate range of several hundred dollars to $15,000. Ex. 1; Ex. 2. Claimants who stand to receive compensation at the low end of the range are employees who did not work at LANL for very long, and/or who did not have a significant salary disparity.   Ex. 1; Ex. 2.

#### b.   Incentive Payments

Under the Settlement Agreement, the Consent Plaintiffs and Class Representatives will receive additional compensation for their contribution to the investigation, prosecution and settlement of the Consolidated Actions. Eight percent of the Settlement Fund ($960,000) is allocated to the Consent Plaintiff and Class Representative Incentive Award Fund from which Consent Plaintiffs and Class Representatives shall be provided incentive awards. Under the Allocation Plan, each Consent Plaintiff who filed a Notice of Consent on or before December 20, 2005 will receive an additional $5,000 payment (there are 64 Consent Plaintiffs eligible to receive this payment). In addition, those Consent Plaintiffs who gave depositions or answered discovery (12 individuals) will each receive an additional payment of $2,500. Thus, $350,000 of the incentive payments will be divided among the Consent Plaintiffs. The remaining portion of

8

the Incentive Award Fund, $610,000, will be set aside as an incentive award to be divided evenly among the five Class Representatives.   Thus, each of the Class Representatives will receive $122,000.[2]

### 2. *Equitable Relief*

The Parties spent several months engaged in the negotiation of equitable relief. However, due to the award of a new contract by the Department of Energy for the operation of LANL (under which a new entity took over the operation of LANL as of June 1, 2006), it became impossible for the Regents to implement many of the elements of equitable relief sought by Plaintiffs.   The equitable relief provided by the Settlement Agreement is thus, necessarily, limited, but includes:

- **New Hire Policy Project**.  The Regents implemented the New Hire Policy Project – an initiative to change DOE/NNSA practice so that selected candidates for vacant job positions will be paid at a salary appropriate to the job classification level without distinction between external and internal candidates, which will help correct pay disparities among female and Hispanic employees as compared to male and non-Hispanic employees.

- **Manager Training**.    Through the expiration of its contract with DOE/NNSA to operate the Laboratory, the Regents continued to provide training to all LANL managers and supervisors involved in the preparation of performance summaries or in the determination of salaries under the Performance and Salary Management ("PSM") process on the following subjects: (a) equal employment opportunity; (b) federal, state, and Laboratory prohibitions against discrimination and retaliation; and (c) diversity and recognizing and avoiding the influence of bias and stereotyping in the making of personnel decisions.

- **Child Care.**  Through the expiration of its contract with DOE/NNSA to operate the Laboratory, the Regents undertook best efforts to afford child-care services to LANL workers.

- **Promotions.**  The Regents agreed that promotion equity would continue

---

[2] In its March 31, 2007 Order, the Court overruled Laurie Quon's objection challenging the amount of the Class Representative incentive awards.

to be reported as part of LANL's existing Affirmative Action Plan through the expiration of its contract with DOE/NNSA to operate the Laboratory.

- **Mentoring and Career Development.** Through the expiration of its contract with DOE/NNSA to operate the Laboratory, the Regents continued to afford existing mentoring and career development opportunities at LANL.

- **No Discrimination or Retaliation.** The Regents committed not to "engage in any policy, practice or procedure that has the purpose or effect of discriminating on the basis of sex, race, ancestry, national origin, or ethnicity against any Class Representative or Class member in regard to compensation, promotions, job assignments, transfers, or training," or to retaliate against any Class Representative or Class member on account of participation in this lawsuit.

These and other provisions relative to equitable relief are set forth at Section XI of the Settlement Agreement. As indicated above, these equitable provisions no longer apply after May 31, 2006 as a new contracting entity took over operation of the Laboratory on June 1, 2006.

### 3.   *Attorneys' Fees and Costs*

In their Settlement Agreement, the Parties agreed that, in addition to paying the $12 million settlement for the benefit of Class members, Defendants would also pay an additional separate amount for Plaintiffs' reasonable attorneys' fees and costs. In accordance with the Settlement Agreement, the Parties submitted the determination of Plaintiffs' attorneys' fees and costs to binding arbitration, the award being subject to confirmation by this Court. The Parties selected an arbitration panel consisting of experienced attorneys Michael H. Harbour (of Madison, Harbour & Mroz, PA), Joseph Goldberg (of Freedman, Boyd, Daniels, Hollander & Goldberg, PA), and Douglas G. Schneebeck (of Modrall, Sperling, Roehl, Harris & Sisk, PA).

After being empanelled in late 2006, the arbitrators permitted the Parties to engage in limited discovery, to file extensive briefs and supporting documentation in support of their respective positions, and to argue their positions at a full hearing held on May 21, 2007. After

considering the extensive evidence and arguments presented by the Parties, on May 23, 2007, the

arbitrators unanimously agreed to an award of reasonable attorneys' fees and costs, as follows:

| | |
|---|---|
| Attorneys' Fees: | $3,800,000 |
| Gross Receipts Tax on Fees: | 289,750 |
| Costs: | 351,503 |
| Total: | $4,441,253 |

Defendants do not oppose this award.  As noted above, Plaintiffs are submitting a

separate memorandum in support of approval of the arbitrators' award.  For purposes of this

Motion for Final Approval, it is important to note that Defendants' payment of this award will be

*in addition* to the $12 million Settlement Fund and will not reduce the amount of money

distributed to the Settlement Class from the Settlement Fund.

### 4.    *Release of Claims*

In accordance with Section XII of the Settlement Agreement, all Class members who do

not opt out of the settlement ("Releasors") will release the Regents and other designated

Releasees from:

> ...any and all claims which accrued on or before the date of the hearing on
> preliminary approval arising from or relating to alleged denials of or differential
> treatment in compensation; benefits based on the amount of compensation; job
> assignments; contracting opportunities; training; education; promotions (including
> promotions resulting from reclassifications); any other injury or harm alleged in the
> Consolidated Actions ("Predicate Facts"), including, without limitation, such denials or
> differential treatment due to alleged discrimination based on sex (not including sexual
> harassment where the sole injury is non-economic) and/or Hispanic race/national
> origin/ancestry/ethnicity discrimination. These released claims (the "Released Claims")
> include, without limitation, all such claims, rights, demands, charges, complaints, actions,
> causes of action, obligations, or liabilities of any and every kind based on or arising out
> of the Predicate Facts, whether arising under the EPA, Title VII, the NMHRA, and/or 42
> U.S.C. sections 1983 and 1981 or characterized as claims for retaliation, whistle blowing,
> breach of contract, tort, violation of public policy, or violation of any other federal, state,
> or local law, statute, or regulation. The Released Claims include, without limitation, the
> claims filed in the Consolidated Actions; any such claims that any Releasor may have

filed or caused to be filed in any court of law, or before any administrative agency, state, federal, or local, or before any arbitrator; and all class and individual claims for attorneys' fees except as provided in section XIII. of this Agreement. Released Claims include retaliation and whistle blowing claims based upon participation in the Consolidated Actions or opposition to the Predicate Facts in the Consolidated Actions. Notwithstanding the foregoing, Released Claims do not include retaliation or whistle blowing claims that are unrelated to any theory of liability alleged in the Consolidated Actions or any other theory of discrimination.3

## C.   Class Notice and Settlement Administration

On June 1, 2006, this Court granted the Parties' Joint Motion for Preliminary Approval of Class Action Settlement Agreement. In that Order, the Court (1) preliminarily approved the Settlement Agreement; (2) certified the Class under Fed.R.Civ.P. 23 and certified the Consolidated Actions as a collective action under 29 U.S.C. § 216(b), (3) appointed named Plaintiffs Barber, Garcia, Martinez, Bennett, and Ebelacker as Class Representatives; (4) appointed Class Counsel; (5) approved the form and manner of the Notice to be sent to Class Members and a Summary Notice to be published in various newspapers concerning the Settlement Agreement; (6) approved the forms of, and set deadlines for submission of, claim forms, exclusion requests ("opt outs") and objections; and (7) set for October 31, 2006 a hearing for final approval of the settlement.

The Settlement Agreement preliminarily approved by the Court provided for a detailed Notice Package to be sent to all Class members informing them of their rights under the Settlement Agreement and for a Summary Notice to be published in local newspapers and in a LANL all-employee bulletin. Copies of the Notice and Summary Notice were approved by this Court in its June 1, 2006 Order Granting Preliminary Approval. Counsel for the Parties retained Rust Consulting, Inc. ("Rust") as Claims Administrator to carry out the duties of mailing the

---

3 In its March 31, 2007 Order, the Court overruled Laurie Quon's objection regarding the scope of the release.

Notice Package and publishing the Summary Notice in the newspapers. The Regents provided Rust with a database containing the names and last known addresses for all potential Class members. After receipt of the database from the Regents, Rust began the notice and claims administration process.

In accordance with the Settlement Agreement and the Court's June 1, 2006 Order, Rust mailed the Court-approved Notice Package to approximately 7,700 current and former LANL employees. Ex. 3, Rust Affidavit. Rust caused to be published the Court-approved Summary Notice in the Los Alamos Monitor on July 23, August 1, and August 11, 2006; the Santa Fe New Mexican on July 21, August 1, August 11, 2006; and the Albuquerque Journal and Tribune on July 24, August 1, and August 11, 2006. Ex. 3. The Regents also published the Summary Notice in the Laboratory's Daily News Bulletin and in an all-employee memorandum from the Laboratory Director's office, both of which were distributed to all current Laboratory employees. Copies of these publications are attached as Ex. 3. Furthermore, Rust created an interactive website to provide information to and answer questions of potential Class Members, and further provided a toll free number to call with questions. Ex. 3. Class Counsel also fielded dozens of calls from Class members and answered their questions about the terms of the settlement. Ex. 1; Ex. 2. Class Counsel further held a seminar to answer questions of interested Class members; a videotape of that seminar was subsequently shown on local television in the Los Alamos/Santa Fe area. Ex. 1; Ex. 2.

To date, approximately 3,100 individuals have submitted Claim Forms to Rust; 130 individuals have filed Opt-Out Forms; four (4) individuals have filed objections to the settlement. Ex. 1.

13

### D.     Objections to the Settlement Agreement

The four objections to the Settlement Agreement were filed by Laurie Quon, Debra Wrobleski, and Angela Chambers. One of the objections – the Wrobleski objection – was filed on behalf of two individuals. The Court overruled Quon's objections in its March 31, 2007 Order.

In her objection, Quon argued that (1) the class incentive awards were too substantial, (2) the release language contained in the Settlement Agreement was too broad, and (3) the amount of Plaintiffs' attorneys' fees (which had not yet even been determined) was too high. At a March 27, 2007 hearing, the Court considered and explicitly overruled the first two arguments contained in Quon's objection. For that reason, Quon's objections are not addressed further in this motion. However, in the event the Court intends to take up Quon's argument regarding the amount of Plaintiffs' attorneys' fees at the final fairness hearing, the issue is addressed in Plaintiffs' separately-filed memorandum in support of approval of attorneys' fees and costs.

The Court has not yet addressed the Wrobleski or Chambers objections, and presumably will do so at the final fairness hearing. The Wrobleski objection complains that the December 20, 2005 deadline for allowing Consent Plaintiffs to qualify for an additional incentive award of $5,000 is arbitrary and that a salary adjustment was not part of the settlement. The Chambers objection argues that the proposed settlement payment will not compensate her fully for her own personal salary discrepancy. These objections are addressed in Section III.C below.

14

### III. ARGUMENT:

**THE COURT SHOULD CERTIFY THE CLASS, GRANT FINAL APPROVAL,
AND OVERRULE ALL OBJECTIONS TO THE SETTLEMENT**

A.      **Adequate Notice Has Been Provided to the Class and the Terms of the
Settlement are Fair, Reasonable and Adequate**

Settlement of a class action requires the Court's approval.  Rule 23(e) ("A class action

shall not be dismissed or compromised without the approval of the court, and notice of the

proposed dismissal or compromise shall be given to all members of the class in such a manner as

the court directs").  *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240,

242 n. 1 (S.D. Ohio 1991). The law generally favors the settlement of complex class actions. *Id.*

at 246; *see also* 4 A. Conte & H. Newberg, *Newberg on Class Actions*, §11.41 (4th ed. 2002).

The Court should approve a class action settlement if the settlement is "fair, reasonable and

adequate." Rule 23(e)(1)(C); *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d 1249, 1256 (D.

Kan., 2006). *See also Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990);

*Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *In re Rio Hair Naturalizer*

*Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *11 (E.D. Mich. Dec. 20, 1996) (*citing*

*Manual for Complex Litigation*, §30.42 (3d ed. 1995)). The Court's main concern in evaluating a

class action settlement is to ensure that the rights of passive class members are not jeopardized

by the proposed settlement.  *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d at 1255 (*citing*

*Amchem Prods., Inc. v. Winsor*, 521 U.S. 591, 623 (1997)).

There are three steps on the road to final approval of a class action settlement: first, the

Court must preliminarily approve the proposed settlement; second, members of the class must be

given proper notice of the proposed settlement; and third, after holding a hearing, the Court must

give its final approval to the settlement. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983);

*Enter. Energy Corp.*, 137 F.R.D. at 245; *In re Dun & Bradstreet Credit Servs. Customer Litigation*, 130 F.R.D. 366, 369 (S.D. Ohio 1990). The Court granted preliminary approval of the settlement in its June 1, 2006 Order. Thus, the Court must at this point determine whether the Parties provided proper notice of the settlement to the Class and whether the terms of the settlement are fair, reasonable and adequate.

### 1.    *Proper Notice Has Been Provided to the Class*

"[I]n any proceeding [that] is to be accorded finality," due process requires that interested parties be provided with "notice reasonably calculated, under... the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must be reasonably calculated to reach interested parties and where the names and addresses of the interested parties are known, due process requires mailed notices. *Id.* at 318-19; *Dejulius v. New England Health Care Employee Pension Fund*, 429 F.3d 935 (10th Cir. 2005). The contents of the class notice must "'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'" *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1995) (*quoting Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982)). Class notice is sufficient if it "may be understood by the average... class member." *Hitt v. Nissan Motor Co. Ltd. (In re Nissan Motor Corp. Antitrust Litig.)*, 552 F.2d 1088, 1104 (5th Cir. 1977); *see also Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard") (internal quotation marks & citation omitted).

16

Here, the Notice and Summary Notice and their method of dissemination meet these requirements. The Notice and Summary Notice clearly and concisely informed Class members of all the relevant aspects of the litigation: (1) the Class definition and statement of claims; (2) the litigation history; (3) the terms of the Settlement Agreement; (4) how the settlement proceeds will be allocated; (5) the amount of compensation requested for the Class Representatives and Consent Plaintiffs to compensate them for their services to the Class; (6) the maximum amount of attorneys' fees and costs which may be awarded to Class Counsel; (7) the binding effect of any judgment approving the settlement on those who do not opt out; (8) the right to object to the settlement and the procedure for doing so; and (9) whom to contact to obtain additional information regarding the Settlement or the litigation. The notices provide all the information necessary for Class members to make an informed decision with respect to whether to remain in or opt out of the Class or whether to object to the proposed settlement.

The method of providing notice to potential Class members also complies with the requirements of due process. The Claims Administrator mailed the Court-approved Notice Package to approximately 7,700 current and former employees. Ex. 3. The Claims Administrator also caused the Summary Notice to be published in several newspapers, some with local and some with statewide circulation. Ex. 3. Pursuant to the Settlement Agreement, the Regents also published the Summary Notice in LANL's Daily News Bulletin and in an all-employee memorandum from the LANL Director's Office, both of which were distributed to all current LANL employees. Ex. 4. The Claims Administrator further created an interactive website to provide information to and answer questions of potential Class members, and provided a toll free number to call with questions. Ex. 3. Class Counsel also fielded dozens of calls from Class Members and answered their questions about the terms of the settlement. Ex. 1;

17

Ex. 2.  Class Counsel further held a seminar to answer questions of interested Class members, and a videotape of that seminar was subsequently shown on local television in the Los Alamos/Santa Fe area. Ex. 1; Ex. 2.

In summary, the Court should hold that the notice requirements of Rule 23 and the due process clause have been met in the present case.

### 2.    *The Settlement is Fair, Reasonable and Adequate*

The Tenth Circuit has established four non-exclusive factors which this Court must consider in evaluating whether the Parties' settlement in this case "is fair, reasonable and adequate:  (a) whether the proposed settlement was fairly and honestly negotiated; (b) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (c) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (d) the judgment of the parties that the settlement is fair and reasonable." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)(*internal quotation marks & citation omitted*); *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d at 1256.[4]

In considering whether to grant final approval, the Court cannot modify the proposed settlement, but must approve or disapprove the proposed settlement "as a whole" in relation to all of those concerned. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986); *Walsh v. Great At. & Pac. Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983); *In re Rio Hair Naturalizer Prods. Liab. Litig.*, 1996 WL 780512 at *11 ("The touchstone for final approval is the effect on the class as a whole

---

4 Courts in other circuits utilize similar factors, such as (1) the Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the judgment of experienced trial counsel; (5) the nature of the negotiations; (6) the objections raised by the class members; and (7) the public interest. *See Enter. Energy Corp.*, 137 F.R.D. at 245; *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 336, 371 (S.D. Ohio 1990)(*citing Williams*, 720 F.2d at 922); *Thompson v. Midwest Found. Indep. Physicians Ass'n*, 124 F.R.D. 154, 157 (S.D. Ohio 1988).

in light of the particular circumstances. . .")(*emphasis omitted*).    The Court examines the settlement "in its entirety and not as isolated components." *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D at 246.  Also, the Court is not "to determine the merits of the controversy or the factual underpinning of the legal authorities advanced by the parties." *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).  *See also Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314-15 (7th Cir. 1980)(*overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998)).    To do so would defeat the purposes of the settlement, which include avoiding a determination of sharply contested issues and dispensing with expensive and wasteful litigation.  *Levin v. Miss. River Corp.*, 59 F.R.D. 353 (S.D.N.Y. 1973), *aff'd mem.*, 486 F.2d 1398 (2d Cir. 1973).

Examination of the Tenth Circuit's factors confirms that the settlement in the present case is fair, reasonable and adequate.

### a.    The Proposed Settlement was Fairly and Honestly Negotiated

The first factor the Court must consider is whether the proposed settlement was fairly and honestly negotiated.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d 1249, 1256 (D. Kan. 2006).  In evaluating the propriety of a proposed settlement, courts have frequently focused on the negotiating process by which the settlement was reached to determine whether that process was genuinely adversarial.  *See e.g., Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983).

In the present case, settlement negotiations were only undertaken after the Parties engaged in discovery, after the Regents obtained dismissal of some of Plaintiffs' claims, and after Plaintiffs' Motion for Preliminary Certification of the Collective Action had been fully

19

briefed.   From May 2004 until early 2005, the Parties exchanged discovery, including interrogatories, requests for production, and depositions.   The Regents produced thousands of pages of documents and computer files, including but not limited to documents regarding the Regents' performance and salary management systems, records of employment, salary actions, promotions of putative class members, and prior studies of compensation for employees at LANL.   The Regents deposed some of the named Plaintiffs and other witnesses and filed a motion to dismiss specific claims in the Complaints.   The Parties also retained reputable experts to assist them in analyzing the issues in this case.   More specifically, both sides retained statistical experts to help analyze the LANL salary data and determine whether pay disparities existed and, if so, to what extent.   Plaintiffs assert they also retained an expert to assist in their analysis of the salary and performance management system at LANL.   The Parties had sufficiently developed the facts in the Consolidated Actions to fully analyze the pro and cons of settlement.   *See Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000); *Collier v. Montgomery County Hous. Auth.*, 192 F.R.D. 176, 184 (E.D. Pa. 2000); *Bryant v. Universal Servs.*, No. CIV. A. 99-2944, 2000 WL 680258 at * 3 (E.D. La. May 24, 2000); *In re Holocaust Victim Assets Litig.*, 105 F.Supp.2d 139, 146 (E.D.N.Y. 2000).

Settlement negotiations lasted for nearly a year, involving four separate mediation sessions with two experienced mediators, several unmediated meetings between counsel, and many telephone conversations and email exchanges among counsel.   Ex. 1; Ex. 2.   Settlement negotiations were hard-fought, arms-length, and contentious at times.   The Parties made use of statistical experts during the course of settlement discussions both to support their positions and to craft a settlement acceptable to both sides.   Ex. 1; Ex. 2.   Clearly, the settlement negotiations were adversarial in nature.   *See In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d at 1260 (finding

that settlement negotiations, although conducted at an early stage of litigation, were fair and honest, thus supporting final approval). The first factor weighs in favor of final approval.

### b. Serious Questions of Law and Fact Place the Ultimate Outcome in Doubt

The second factor the Court must consider is whether serious questions of law and fact place the ultimate outcome of this case in doubt. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *In re Sprint Corp. ERISA Litig.,* 443 F.Supp.2d 1249, 1260-61 (D. Kan. 2006). While Plaintiffs believe they have meritorious claims on the merits – particularly since their assertion of LANL-wide pay disparities for females and Hispanics was supported by the analysis of their statistical expert as well as anecdotal evidence – Plaintiffs must concede that they faced several hurdles on their way to a successful outcome in the Consolidated Actions. First, and foremost, Plaintiffs faced a difficult burden in obtaining class certification in this case because the Regents' statistical expert's analysis refuted Plaintiffs' contention that discrimination in compensation was widespread throughout LANL. The Regents' expert found discrepancies in compensation for females and Hispanics in only a few isolated divisions at LANL. The Regents also developed anecdotal evidence that it contended explained the few statistically significant pay differences identified by their expert. Moreover, the Regents submitted evidence which it contended supported its position that salary decisions at LANL were not centralized but rather were made by a large number of individual managers throughout LANL, and that a determination of whether any Plaintiff's compensation level was appropriate must be individually scrutinized to determine whether it was commensurate with his/her White male peers. This contention, if proved, would have made it difficult for Plaintiffs to establish that pay disparities at LANL were the result of a single policy or practice of discrimination. *Thiessen v. Gen. Elec. Capital Corp.,* 267 F.3d 1095 (10th Cir. 2001) (certification of EPA class

requires proof that the putative class members were together the victims of a single decision, policy, or plan).

Second, if class certification had been denied or limited, Plaintiffs would have been faced with prosecuting scores of individual cases alleging salary discrimination against female and Hispanic employees. While Plaintiffs believe some of the individual cases of discrimination would have been relatively easy to prove, Plaintiffs recognize that some of the cases would have been difficult to prove and may have failed. Identifying each Plaintiff's proper peer(s) for salary comparison purposes would have been challenging. Furthermore, in some of those cases it would have been difficult for Plaintiffs to overcome the Regents' assertion of legitimate business reasons for the salary disparities identified. Moreover, the time and resources required to prosecute more than a handful of individual cases would have been immense, placing in substantial doubt the possibility of obtaining relief for a significant number of LANL employees. In the end, these serious questions of law and fact would have placed the ultimate outcome of the Consolidated Actions in doubt. *See In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d at 1260-61 (finding that serious questions of law and fact regarding plaintiffs' claims placed the ultimate outcome in doubt and weighed in favor of final approval). This factor also weighs in favor of final approval.

### c. The Value of Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation

The third factor to be considered by the Court is the value of immediate recovery under the proposed settlement versus the mere possibility of future relief after protracted and expensive litigation. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d 1249, 1261 (D. Kan. 2006). There can be no doubt

whatsoever that if the Parties had not reached an agreement to settle the Consolidated Actions, litigation in these cases would have been exceedingly difficult, expensive and lengthy. The Parties' hearing on class certification was not even set until January 2006, two years after the first of the Consolidated Actions was filed. After the Court ruled on the difficult class certification issues, the Parties would have proceeded to additional discovery on the merits, which they anticipate would have taken up to another two years. In all likelihood, the Consolidated Actions, had they been certified, would not have been ready for trial until late 2007, nearly four years after they were filed. Due to the complexity of the issues, the large amount of money at stake, and the number of attorneys and experts involved in these cases, tremendous resources would have been expended trying these cases, either collectively or individually. And as noted above, the ultimate outcome of this case was uncertain due to serious disputed questions of law and fact.

By settling this case and providing $12 million for the benefit of several thousand female and Hispanic employees at LANL, all Parties have averted many of the risks of proceeding with litigation. Assuming up to 3,100 valid Claimants, Class Counsel estimate that each Claimant can expect to receive between several hundred dollars and $15,000 (depending on their length of employment and salary discrepancy). Thus, the settlement provides a meaningful financial benefit to Class members.[5]

The settlement also provided some operational changes at LANL through May 31, 2006, which may have helped ameliorate some of the pay disparities for females and Hispanics. For example, LANL agreed to undertake the New Hire Policy Project – an initiative to change

---

[5] Because the Regents has agreed to pay Plaintiffs' reasonable attorneys' fees and costs *in addition to* the $12 million settlement, all of the Settlement Fund will benefit the Class. A separate payment of attorneys' fees and costs might not have been achieved if Plaintiffs had pursued their claims to trial.

DOE/NNSA practice so that selected candidates for vacant job positions will be paid at a salary appropriate to the job classification level without distinction between external and internal candidates. The Parties reasonably believe that this project has helped and will continue to help correct pay disparities among female and Hispanic employees as compared to male and non-Hispanic employees. The Settlement Agreement also provided for manager training, mentoring of LANL employees to promote their advancement, a requirement to use best efforts to establish child care for LANL workers, and an anti-discrimination/retaliation provision, through May 31, 2006.

Of course, resolution of the Consolidated Actions provides a benefit to the Regents as well. It removes the risk of a significant jury award against the Regents, and operates to reduce the continued accrual of attorneys' fees and costs on all sides. Resolution of the Consolidated Actions will save the Parties and the Court a tremendous amount of time and money, while providing meaningful benefit to the Class. This factor also weighs in favor of final approval. *In re Sprint Corp. ERISA Litig.*, 443 F.Supp.2d at 1261 (uncertainty of result and certainty of additional expense to litigate claims weighs heavily in favor of approval). *See also Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000); *Collier v. Montgomery Housing Auth.*, 192 F.R.D. 176, 184 (E.D. Pa. 2000); *Bryant v. Universal Servs.*, 2000 WL 680258 at * 3 (E.D. La. May 24, 2000); *In re Holocaust Victim Assets Litig.*, 105 F.Supp.2d at 146.

### d.   The Parties and Their Counsel Believe the Settlement Is Fair and Reasonable

The fourth factor the Court must consider is whether the Parties and their counsel believe the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002); *In re Sprint Corp. ERISA Litig.,* 443 F.Supp.2d 1249, 1261-62 (D. Kan.

24

2006). First and foremost, the Class Representatives believe this settlement is in the best interest of the Class. Ex. 5, Barber Aff.; Ex. 6 Martinez Aff. (attached as Ex. 3 and Ex. 4, respectively, to Plaintiffs' Response in Opposition to Certain Objections of Laurie Quon [doc. 224], filed March 19, 2007). These Class Representatives' affidavits attest that they have been intimately involved in the Consolidated Actions from the beginning through settlement. They firmly believe that, given the meaningful benefits provided by the settlement and the risks associated with continued litigation, the settlement is fair and reasonable. Ex. 5; Ex. 6.

Counsel for the Parties hold the same belief. All of the Parties' attorneys are experienced trial attorneys. It is the collective judgment of counsel for the Parties that settlement of the Consolidated Actions in accordance with the terms set forth in the Settlement Agreement is fair, reasonable and preferable to continued litigation. The Court should keep in mind the unique ability of class and defense counsel to assess potential risks and rewards of litigation and a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery. *See Cotton v. Hinton*, 559 F.2d. 1326, 1330 (5th Cir. 1977). Some courts even hold that the Court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *See Levell v. Monsanto Research Corp.,* 191 F.R.D. 543, 557 (S.D. Ohio 2000); *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983). This factor also weighs in favor of final approval. *In re Sprint Corp. ERISA Litig.,* 443 F.Supp.2d at 1261 (opinion of the parties' counsel supports final approval of class action settlement).

For the reasons set forth above, the Court should hold that the Parties provided proper notice of the settlement to the Class and that the terms of the Parties' Settlement Agreement are fair, reasonable and adequate.

**B.   The Arbitrators' Determination of Attorneys' Fees and Costs Should be Approved**

Pursuant to the Parties' Settlement Agreement, the amount of Plaintiffs' fees and costs to be paid by Defendants has been submitted to binding arbitration. The arbitrators have determined that Defendants should pay $3,800,000 in attorneys' fees, plus gross receipts tax, and $351,503 in costs. Defendants do not oppose the arbitrators' award.

As fully set forth in Plaintiffs' memorandum in support of approval of reasonable attorneys' fees and costs, filed separately, Plaintiffs maintain that these payments are fair, reasonable, supported by law, and should be approved.

**C.   The Court Should Overrule the Remaining Objections to the Proposed Settlement**

On June 1, 2006, the Court granted preliminary approval of the settlement, holding that the proposed Settlement Agreement is "fair, reasonable and adequate." Order at 2. *See Marcus v. Kan., Dep't of Revenue*, 206 F.R.D. 509, 513 (D. Kan. 2002).6 Because the Court has already preliminarily approved the settlement in the present case, the settlement is presumptively reasonable and individuals who object have a heavy burden of proving the settlement is unreasonable. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)(*citing Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 551 (6th Cir. 1982)(*rev'd. on other grounds*, 467 U.S. 561 (1984)); *Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982)); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 211 (S.D. Ohio 1997); *Rio Hair Naturalizer Hair Prods. Liab. Litig.*, 1996 WL 780512 at *11; *Enter. Energy Corp., v. Columbia Gas Transportation Corp.*, 137 F.R.D. 240,

---

6 To grant preliminary approval, the Court was required to find that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see also Manual of Complex Litig.* § 21.632 (4th ed. 2006); *In re Dun & Bradsteet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 369 (S.D. Ohio 1990); *Williams*, 720 F.2d at 921.

246 (S.D. Ohio 1991).

In considering objections, the Court should keep in mind that the proposed settlement is not required to "achieve some hypothetical standard constructed by imagining every benefit that might some day be obtained in contested litigation." *United States v. Allegheny-Lundlum Indust., Inc.*, 517 F.2d 826, 850 (5th Cir. 1975). *See also Nelson v. Waring*, 602 F.Supp. 410, 413 (N.D. Miss. 1983)("the court should not make the proponents ... justify each term of the settlement against a hypothetical or speculative measure of which concession might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes"). The fact that some class members object to the settlement does not by itself prevent the Court from approving the agreement. *Enter. Energy Corp.*, 137 F.R.D. at 246 (*citing Thompson v. Midwest Found. Indep. Physicians Assoc.*, 124 F.R.D. 154, 159 (S.D. Ohio 1988). In considering the extent and significance of the objections, "the Court must view the agreement in its entirety, rather than isolating individual components of the agreement for analysis." *Bronson v. Bd. of Educ.*, 604 F. Supp. 68, 78 (S.D. Ohio 1984) (*quoting Liddell v. Bd. of Educ.*, 567 F. Supp. 1037 (E.D. Mo. 1983)(*aff'd in part, rev'd in part by Lindell v. Mo.*, 731 F.2d 1294 (8th Cir. 1984))).

The fact that only a small number of class members have objected to the settlement is strong indication of a settlement's fairness. *Newberg* at §11.48. In the present case, it is revealing that, despite the issuance of the Notice Package to more than 7,700 potential Class members, only four (4) objections were filed – *less than four one hundredths of one percent*. By contrast, approximately 3,100 individuals have submitted Claim Forms without objection, and 130 individuals have chosen to opt out of the settlement. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990)(objections of 29 class members out of a settlement class of

281 (over ten percent) "strongly favors settlement); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D. Cal. 1979)(objections from 16% of class was "persuasive" that settlement was adequate). The Parties submit that, given the small number of objections in the present case, the Court should overrule those objections and approve the settlement.

If, however, the Court considers the merits of the three objections filed, it should reach the same result. The Parties will address each objection in turn.

### 1.   *Wrobleski Objection*

Wrobleski brings her objection on behalf of herself and another LANL employee named Adelaida C. Valdez.   Wrobleski contests two aspects of the settlement.   First, Wrobleski complains that the December 20, 2005 deadline for allowing Consent Plaintiffs to qualify for an additional incentive award of $5,000 is arbitrary.   On this point, Wrobleski's argument fails. December 20, 2005 is not an arbitrary date; it was the date that the Parties reached agreement on this aspect of the Settlement Agreement.   The Parties included the December 20, 2005 deadline in the definition of Consent Plaintiffs to acknowledge those persons who declared publicly their desire to join the Consolidated Actions before they could have known that there would any monetary benefit in doing so.   Maintaining this cutoff date is both rational and fair.

Second, Wrobleski complains that a salary adjustment was not part of the settlement.   As explained by Class Counsel at the hearing on the Motion for Preliminary Approval, they negotiated repeatedly and strenuously with the Regents to try to secure pay raises as part of the settlement.   In the end, Plaintiffs were unable to win that concession primarily because the changeover in contractors beginning June 1, 2006 limited Plaintiffs' ability to compel the new operator to raise employees' salaries (the new operator of LANL was not, and is not, a party to the Consolidated Actions).   Despite the absence of pay raises, the terms of the Parties' settlement

are still in the best interest of the Class. *United States v. Allegheny-Lundlum Industs., Inc.,* 517 F.2d 826, 850 (5th Cir. 1975)(proposed settlement is not required to "achieve some hypothetical standard constructed by imagining every benefit that might some day be obtained in contested litigation"); *Nelson v. Waring,* 602 F.Supp. 410, 413 (N.D. Miss. 1983)("the court should not make the proponents … justify each term of the settlement against a hypothetical or speculative measure of which concession might have been gained; inherent in compromise is the yielding of absolutes and abandoning of highest hopes").   Moreover, any Class member, including Wrobleski, was free to opt out of the settlement and to pursue her own claim for whatever damages and equitable relief she felt appropriate, including pay raises.

### 2. *Chambers Objection*

Chambers complains that the proposed settlement payment will not compensate her fully for her own personal salary discrepancy.   Chambers includes with her objection salary information for herself and others she works with, arguing her White male counterparts earn substantially more than her.   There are two simple responses to Chambers' objections.   First, compromise settlements rarely, if ever, provide one party with everything she desires.   *United States v. Allegheny-Lundlum Industs., Inc.,* 517 F.2d 826, 850 (5th Cir. 1975; *Nelson v. Waring,* 602 F.Supp. 410, 413 (N.D. Miss. 1983).   Even if the settlement does not fully compensate Chambers, the overall recovery for the Class is fair, reasonable and adequate.   *See In re Sprint Corp. ERISA Litig.,* 443 F.Supp.2d 1249, 1268 (D. Kan. 2006) (overruling various objections to settlement by individuals who claimed they would not recover the vast majority of their losses, and holding that the overall recovery was adequate).   Second, the ability to opt out of the settlement exists for the very reason that a class action settlement may not provide the best option for every class member.   In the end, if Chambers believed the Parties' settlement was not

29

sufficient to address particularly her salary situation, she could have exercised her right to opt out

and to pursue her own claims for damages.

## IV. CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court issue its Order:

1.      Holding that the Notice of Class Action and Summary Notice were disseminated as required by the Court and that the notices fully and accurately informed Class members of all material elements of the proposed settlement, constituted the best notice practicable under the circumstances, constituted valid and sufficient notice to all Class members, and fully complied with Fed.R.Civ.P. 23 and the requirements of due process;

2.      Adopting the terms of the Settlement Agreement and holding, pursuant to Fed.R.Civ.P. 23(e), that the terms of the Settlement Agreement, including the terms of the Settlement Allocation Plan are fair, reasonable and adequate in all respects;

3.      Approving payment by Defendants of Plaintiffs' reasonable attorneys' fees and costs;

4.      Holding that neither the Court's Order nor the Settlement Agreement constitutes a finding or admission by Defendants of any liability or wrongdoing whatsoever;

5.      Overruling all remaining the objections to the Settlement Agreement;

6.      Dismissing on the merits and with prejudice the claims asserted by the Class in the Consolidated Actions, provided that the Court does not dismiss Plaintiff Veronique Longmire's individual claims which will remain pending in this court under this cause number;

7.      Ordering that all those to whom the Notice of Class Action was directed and who have not timely and validly opted out of the Class are deemed to have released and forever discharged the Released Parties from all the Released Claims as set forth in the Settlement Agreement and will forever be barred and enjoined from asserting, instituting, or prosecuting in any capacity, in any forum, any action or proceeding against the Released Parties concerning the Released Claims;

8.      Ordering that no person may assert any claim against the Class Representatives, Class Counsel, or Claims Administrator based on the distribution of the Settlement Fund made substantially in accordance with the Settlement Agreement and/or the Orders of the Court; and

9. Ordering that the Court retains continuing jurisdiction of the Class claims for the purposes of supervising the claims administration process

Respectfully submitted,

YENSON, LYNN, ALLEN & WOSICK, P.C.
Patrick D. Allen
4908 Alameda Blvd NE
Albuquerque, New Mexico 87113-1736
(505) 266-3995

Michael J. Flannery
CAREY & DANIS, LLC
8235 Forsyth Boulevard, Suite 1100
St. Louis, Missouri 63105
(314) 725-7700

By: _____

*Attorneys for Barber Plaintiffs*

ROTHSTEIN, DONATELLI, HUGHES,
DAHLSTROM, SCHOENBURG & BIENVENU, LLP
John C. Bienvenu
Richard W. Hughes
Robert R. Rothstein
Post Office Box 8180
Santa Fe, New Mexico 87504-8180

By: _____

*Attorneys for Garcia Plaintiffs*

31

Bruce Hall
Scott D. Gordon
RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.
Post Office Box 1888
Albuquerque, New Mexico 87103

M. Kirby C. Wilcox
Jeffrey D. Wohl
Katherine C. Huibonhoa
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, 24th Floor
San Francisco, CA 94105-3441

Cindy Lovato-Farmer
Laboratory Counsel – Litigation and Employment Law
Los Alamos National Laboratory
Post Office Box 1663, MS-A187
Los Alamos, New Mexico 87545

By: _Electronic Approval  6/08/07_
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that all of the counsel who are signatories to this Motion were served via CEF, and that the following parties/counsel were served via regular mail on this _8th_ day of June 2007:

George Geran
Law Offices of George Geran
625 Franklin Ave.
Santa Fe, NM 87501-3619
*Counsel for Objector Laurie Quon*

John J. Pentz
Class Action Fairness Group
2 Clock Tower Place, Suite 260G
Maynard, MA 01754
*Counsel for Objector Laurie Quon*

Debra Wrobleski
270 Kilby Ave.
Los Alamos, NM 87544
*Pro Se Objector*

Angela Chambers
6909 Thunder Rd.
Amarillo, TX 79119
*Pro Se Objector*

_____
Patrick D. Allen