**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LAURA BARBER, on behalf of themselves
and others similarly situated,

    Plaintiffs

v.                                                                                                     CIVIL NO. 03-1404 WPJ/RLP

REGENTS OF THE UNIVERSITY OF
CALIFORNIA, d/b/a Los Alamos National
Laboratory,

    Defendant,

YOLANDA GARCIA, et al.,

    Plaintiffs,

v.

REGENTS OF THE UNIVERSITY OF
CALIFORNIA, AND G. Peter Nanos,
in his individual and official capacities,

    Defendants

                                                       *Consolidated with*     CIVIL NO. 05-1082 JH/DJS

VERONIQUE A. LONGMIRE ,

    Plaintiff pro se,

v.

REGENTS OF THE UNIVERSITY
OF CALIFORNIA, d/b/a Los Alamos
National Laboratory,

    Defendant.

                                         *Consolidated with*  CIVIL NO. 07-00673 DJS/ACT

VERONIQUE A. LONGMIRE,

    Plaintiff pro se,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA
d/b/a Los Alamos National Laboratory, and
LOS ALAMOS NATIONAL SECURITY, LLC
d/b/a Los Alamos National Laboratory,

    Defendants,

                                                                         *Consolidated with* CIVIL NO. 07–0753 LAM/LFG

VERONIQUE A. LONGMIRE,

    Plaintiff pro se,

v.

REGENTS OF THE UNIVERSITY OF CALIFORNIA
d/b/a Los Alamos National Laboratory, and
LOS ALAMOS NATIONAL SECURITY, LLC
d/b/a Los Alamos National Laboratory,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
<u>PLAINTIFF'S MOTION TO COMPEL</u>**

      **THIS MATTER** comes before the Court on Plaintiff Veronique A. Longmire's Motion to Compel Answers to Requests for Production, Interrogatories, and Objections to Defendants Responses to Requests for Admission, and her objection to supplemental discovery responses [Filed as Docket No. 73, Civ No. 05-1082 WJ/RLP].

**I.    Requests for Admission**

      F.R.Civ.P. 36 states that "The party who has requested the admissions may move to determine the sufficiency of the answers or objections." Plaintiff "objects to Defendant's *denials*

of her Requests for Admission on the grounds that they assume erroneous facts." (Docket No. 73, p. 2). No other grounds for the objection is raised, and Plaintiff has not addressed the Responses individually. Accordingly, I will address only the Responses to Requests 1-4, and 8-11, which denied the admissions requested.

The purpose of F.R.Civ.P. 36 is to "establish admission of facts about which there is no dispute." 7 J. Moore, Moore's Federal Practice ¶ 36.02, at 36-7 (3d ed.2005). Defendant denied Requests No. 1, 3, 4 and 8 without explanation. These responses are adequate, and the facts stated in the requests are in dispute. Defendant denied Request No. 2, and explained the reason for the denial. Defendant's Response to Request No. 2 is sufficient and the facts stated in the requests are in dispute. Defendant objected to Requests No. 9 and 10 on grounds of relevancy, and denied the facts stated therein. Defendant's Responses to Requests No. 9 and 10 are sufficient. Defendant objected to Request No. 11 on the grounds that it was vague, and denied the facts stated therein. Defendant's Response to Request No. 11 is sufficient.

**I.     Matters not addressed**

**Interrogatories No. 1, 7, 16, 18 & 19**
**Requests for Production No. 31 &  34,**

Defendant made general objection to Plaintiff's discovery requests to the extent they sought information prior to  December 2003, the date Plaintiff filed her initial law suit alleging retaliation, and after May 31, 2006, when Defendant ended its sole management of Los Alamos National Laboratory.

Plaintiff has pending before the District Court a Motion to Amend her Complaint to add an

additional defendant and a claim for discrimination based on race[1] which she contends will obviate Defendant's objections. In ¶¶18, 50, 95, 100-103, 120, 135 of her Motion Plaintiff states that she may pose the cited discovery requests in the future if her Motion to Amend her Complaint is granted.[2] Accordingly, I will not address Interrogatories No. 1, 7 16, 18, 19 or Requests for Production 31 and 34 at this time.

## II.     Interrogatories

### Interrogatory No. 2

Interrogatory No. 2 asked Defendant to describe the education level and degree held by Randy Tremper relevant to the areas in which his performance was evaluated in 2004-2005. Defendant objected to the extent that the Interrogatory assumed what factors were considered in evaluating his performance. Defendant also answered by referring to Dr. Tremper's undergraduate and graduate degrees in science and work experience.

Defendant has answered Interrogatory No. 2, no further answer is required.

### Interrogatory No. 3

Interrogatory No. 3 asked Defendant to describe the education level and degree held by Tony Beugelsdijk relevant to the areas in which his performance was evaluated as a Business Development Executive from March - July 2004. Defendant objected to the extent that the Interrogatory assumed what factors were considered in evaluating his performance. Defendant also answered by referring to Mr. Beugelsdijk's graduate degrees in science and work experience.

---

[1] Plaintiff's Motion to Amend was denied on June 13, 2007 [Docket No. 52]. Her motion for reconsideration is currently pending. [Docket No. 53].

[2] The court recognizes that Plaintiff changed her view of the presently applicable time frame in her Reply Brief. (Docket No. 262, p. 3, filed in 03cv1404 WJ/RLP). However, as Defendant has not had the opportunity to respond to this change of view, it will not be addressed herein.

Defendant has answered Interrogatory No. 3, no further answer is required.

### Interrogatory No. 5

Interrogatory No. 5 sought identification of the policies in the LANL Administrative Manual pursuant to which Dr. Tremper and Mr. Beugelsdijk were converted into Project Leaders in 2004 and then into team leaders without the positions being advertized and completed. Defendant Defendant objected to Interrogatory No. 5, stating that it assumed erroneous facts and sought irrelevant information that is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the objection, Defendant answered that Dr. Tremper was not converted into a Project Leader in 2004;that neither Dr. Tremper nor Mr. Beugelsdijk were ever appointed Team Leaders; that in March 2004, the teams in TT elected team captains; that Dr. Tremper was elected team captain of TMT-3 and Mr. Beugelsdijk was elected team captain of TMT-1; and that in 2005, TMT management submitted Personnel Action Forms converting all incumbent team captains to Project Leaders, pursuant to AM 104.

Plaintiff "request(s) an opportunity to be heard on the issue of whether she is allowed to depose all non-managerial employees who were employed in Plaintiff's Division in 2004-2005, and of whether Defendant can bear the expenses of doing so." [Docket No. 262, p. 4, filed in Civ 03-1404 WJ/RLP]. Such a request must be raised by appropriate motion.

Defendant has answered Interrogatory No. 5, no further answer is required.

### Interrogatory No. 6

Interrogatory No.6 asked how Belinda Padilla, who had no science degree, was qualified to be converted from an Acting to a Program Manager in 2004. Defendant answered that Ms. Padilla was not converted to Program Manager in 2004, but applied for, competed for and was

selected to be a Program Manager based on her leadership and knowledge, skills and abilities in the area of technology transfer and business, and other work experience.  Defendant further stated that a science degree was not a requirement for the position of Program Manager, and referred Plaintiff to job description CAS21433.001-002, which it indicated would be produced.

Plaintiff objects to this answer because Defendants did not produce documents that demonstrated that the program manager position was competed.  Interrogatory No. 6  did not seek production of such documents.

Defendant has answered Interrogatory No.6, no further answer is required.

### Interrogatory No. 8

Interrogatory No. 8  asked Defendant to describe the education level required for the jobs Plaintiff performed from  August 1, 2003 to July 31, 2004, and which were discussed in her annual Performance Salary Review.   Defendant objected to Interrogatory No. 8 to the extent it assumed without basis what factors were considered in evaluating her performance.  Without waiving the objections Defendant stated that it utilized her graduate degree in business and other work experience.

Defendant has answered Interrogatory No.8, no further answer is required.

### Interrogatory No. 9

Interrogatory No. 9 asked Defendants to specify whether the job activities she performed from August 1, 2003 to July 31, 2004, as described in her annual Performance Salary Review, were performed at a level equivalent to or expected from a TSM Business Development Executive, and if not, to explain why not.  Defendant answered that her performance  from August 1, 2003 to July 31, 2004 was as an SSM-3 Business Development Executive, not a TSM Business Development

Executive, and explained in detail the additional requirements (business, scientific and work habits) required of a TSM Business Development Executive.

Plaintiff argues that she was never provided documentation or otherwise informed that she was performing at an SSM-3 level. [Docket No. 73, ¶62-64]. She contends that Defendant's answer to Interrogatory No. 9 is not sufficiently detailed, and that she seeks "a specific, detailed analysis of . . . (an annual performance summary) in order to establish whether a science degree was necessary for performance of the activities described therein." [Docket No. 73, ¶61].

Defendant has answered Interrogatory No.9 is sufficient detail, no further answer is required.

### Interrogatory No. 10

Interrogatory No. 10 asks for the education level (undergraduate/graduate) and degree type(s) (business, science, engineering, etc.) required to perform each of the jobs identified in an attachment to an e-mail dated March 5, 2004, prepared by Mike Connolly, describing his active and planned projects in 2002-2004. Defendant answered that the projects listed by Mr. Connolly in this e-mail utilized his undergraduate and graduate degrees in engineering, a graduate degree in business and other work experience.

Defendant has answered Interrogatory No.10 is sufficient detail, no further answer is required.

### Interrogatory No. 11

Interrogatory No. 11 asked Defendants to specify the differences in activities listed in Plaintiff Longmire's Performance Summary for 2003-2004 and Mike Connolly's Performance Summary for 2002-2003 that justified an approximately $60,000.00 salary difference between Plaintiff Longmire and Mike Connolly. Defendants answered by stating its position that it was

7

inappropriate to compare the salaries of employees with different job classifications and levels in different years. It then provided a detailed summary of factors pertinent to Mr. Connolly's job duties and performance.[3]

Defendant has answered Interrogatory No. 11, no further answer is required.

## Interrogatory No. 12

In Interrogatory No. 12, Plaintiff asked Defendant to state how a statement made to her in a January 2, 2003 e-mail from Karen Taylor, IBD/TTD's HR generalist[4] conforms to LANL policy AM 201 § 01.[5] Defendant objected to the Interrogatory on the grounds that it was vague, but also answered stating that the two statements were consistent.

Plaintiff objects to Defendant's answer, stating that she is "trying to establish whether or not there is consistency between Laboratory Administrative Policy and HR practice." (Docket No. 73, ¶ 80).

Defendant has answered Interrogatory No.12. No further answer is required.

---

[3] Defendant stated that Mr. Connolly was at a higher job classification than Plaintiff Longmire, and as a result he performed work that required a higher and more detailed understanding of the entrepreneurship, science, technology. Defendant referred to Mr. Connolly's education: an engineering degree from the U.S. Naval Academy, a master's degree in Mechanical Engineering from MIT and an MBA from Stanford. Defendant cites his experience as an entrepreneur and with the venture investment community, his utilization of his experience to help found the Technology Maturation Program, and his ability to independently assess technical statements of work and deliverables, prepare statements of work and draft descriptions of technologies with less assistance from other TSMs. Defendant referred to Mr. Connolly's ability to assess technology maturity using independent judgment with less interaction with the inventor  Finally Defendant stated that Plaintiff did not perform these functions with the independence exercised by Mr. Connolly and otherwise explained their view on the uniqueness of Plaintiff's duties and responsibilities.

[4] "Therefore, please remember that the acquisition of a degree does not automatically confer TSM status. The status is determined by the nature of the work and technical degree."

[5] "Position classifications are established based on the level of the duties and responsibilities assigned to a position and in accordance with the Laboratories nondiscrimination policy."

**Interrogatory No. 13**

In Interrogatory No. 13, Plaintiff asked Defendant to explain in detail how her job duties, responsibilities, skills and effort from 2002 to 2005 differed from those of:

Subpart A: Mike Connolly, during his performance year 2002-2003;

Subpart B: Tony Beugelsdijk, during his performance year 2003-2004;

Subpart C: Randy Tremper, during his performance year 2004-2005.

Defendant objected to Interrogatory No. 13 because it contained 3 distinct subparts. It then answered the Interrogatory by referring to its answer to Interrogatory No. 11 which discussed Mr. Connolly comparing his education, experience duties and responsibilities with Plaintiff, and providing similar extensive information with regard to Tony Beugelsdijk and Randy Trempter.

Defendant has answered Interrogatory No. 13, no further answer is required.

**Interrogatory No. 14**

In Interrogatory No. 14, Plaintiff asked Defendant to explain in detail the criteria it used to identify employees in the SSM3 and TCP-2 levels listed as comparators in a prior discovery request, beginning in 2001 and ending in early 2007. Defendant objected to the request to the extent it sought information prior to December 2003, and after May 31, 2006. Without waiving that objection, Defendant stated that in its response to Plaintiff's first set of requests for production, it narrowed the scope of relevant comparators to those employees who fell within Plaintiff's job series and level (TCP-2), there being no other basis for identifying the comparators.

Plaintiff states that she will resubmit this interrogatory if the District Court grants her Motion to Amend. [Docket No. 73, ¶ 88].

Defendant has answered Interrogatory No. 14, no further answer is required.

**Interrogatory No. 15**

Interrogatory No 15 asked Defendant to explain in detail why IBD/TTD managers decided to assign Plaintiff Longmire a below average ORC of 5.5 for the annual performance year 2004-2005, when she won two Distinguished Performance Awards during the same period. Defendant responded that the Performance Awards Plaintiff received recognized team not individual achievement: That one award was initiated outside TT division and another award was a TT division team award. It further stated that Plaintiff's 5.5 ORC score was consistent with her overall contribution to TT and her performance relative to her peers.

Defendant has answered Interrogatory No. 15, no further answer is required.

**Interrogatory No. 17**

Interrogatory No. 17 asks how Laboratory Policy 101 §2 was applied to when she was unable to compete for position project leader, which was eventually filled by Eric Canuteson.[6] Defendant objected to Interrogatory No. 17 on the grounds that it was vague, argumentative and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendant stated that the changes were consistent with AM 101.

---

[6] **Interrogatory No. 17**: "Between June 2004 and August 2004, Plaintiff Longmire was volunteering as a Team Leader/Team Captain within TTD. TTD's Team Leader/Team Captain functions within the New Technology Management Office were all volunteer position from March to August 2004. On August 18, 2004, Donna Smith announced that she had formalized those volunteer positions into Project Leader functions. Explain how the fact that Plaintiff Longmire was not able to compete for the official Project Leader function and was replaced with Eric Canuteson, who was a new, uncleared, limited-term employee who had been hired into LANL six weeks earlier, conforms with LANL's Administrative Manual AM 101 (dated October 20, 2003) section 02, specifically with "the Laboratory is committed to applying good faith efforts to achieve prompt and full utilization of minorities and women, where deficiencies exist," and with section 07, specifically with "...the Laboratory objectives include (1) ensuring that members of groups who in the past may have been victims of employment discrimination are given equal opportunities to compete for jobs and to have their credentials assessed fairly and (2) demonstrating good faith effort to fully utilize qualified minorities and women."

I find that although somewhat argumentative, Interrogatory No. 17 is not vague and could lead to the discovery of admissible evidence. The Interrogatory seeks Defendant's rationale for placing Mr. Canuteson, who presumably is not a minority or a woman, in a project leader position rather than permitting Plaintiff to compete for that job.

Plaintiff's Motion to Compel an Answer to Interrogatory No. 17 is granted.

### III. Requests for Production

#### Request for Production No. 30

Request for Production No. 30 seeks documents generated by IBD/TTD and HR during the process of preparing, reviewing and approving Job Ad. Nos. 017612, 207085, 210183 and the Business Development/Licensing Executive positions posted in March and December 2006 (Job Ad. No. 212627), starting with employment acquisition forms, including any documents which contain justifications for leveling the positions in the TSM series. Defendant objected to this request insofar as it seeks information beyond May 31, 2006. Without waiving this objection Defendant avers that after repeated and diligent search at the HR Division Service Center and the HR Generalist in Plaintiff's Division, it had found one responsive document which it had produced in a Supplemental Response. Defendant also states that it has not searched the computer of every person who might have e-mails or notes regarding these job postings, and that it would be unduly burdensome and expensive to do so. (Docket No. 86, pp. 11-12, filed in 05cv1082 WJ/RLP).

It would appear from the dispute over this request for production that Defendant has or can produce the referenced job ads, but not memos, drafts, etc., that may have been generated in creating the job ads, save for the one document referenced above. There is no evidence before the court to indicate that retention of such documentation is obligated by any policy or practice. There is no

evidence before the court indicating the cost to Defendant of making a wider search, into the files and computers of others who might have maintained the documents requested.

All discovery requests are a burden on the party who receives them and must respond to them. Unless the court concludes that the task of producing is unusual or extraordinary, the general rule requires the entity producing them to bear that burden. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Nevertheless, a court may protect the responding party from "undue burden or expense" by shifting some or all of the costs of production to the requesting party. Id. (citing Fed.R.Civ.P. 26(c)). Here, the expense of locating and extracting responsive e-mails may be substantial.

Plaintiff's Motion to Compel additional response to Request for Production No. 30 is taken under advisement. Defendant shall have until **9th of October 2007** to submit to the court an affidavit describing its search efforts to date, stating the job title of every employee consulted and the number of hard copy or computer files searched. Defendant shall also state how a wider search for the documents requested could be made, stating the number of employees and computers involved, the individual or individuals who would be responsible for making such a search, and the cost in time and money of making such a search. Following the filing of this affidavit, the court will determine whether to order an additional response, and whether the shifting of the all or a portion of costs of production is appropriate.

**Request for Production No. 32**

Request for Production No. 32 asked for notes (handwritten and electronically generated) memos, e-mails and other forms of documents describing Tremper's, Connolly's and Beugelsdijk**'s** responsibilities as business development executives as of IBD's reorganization into TTD between

March 2004 and 2006, including documents exchanged between IBD/ TTD managers and these three individuals, which describe their responsibilities as business development executives. Defendant states that it has produced all responsive documents found following a search of the personnel files of Messrs Tremper, Connolly and Beugelsdijk, including their performance summaries and personnel actions forms, Individual Performance Objectives forms, "shadow" files kept by TT Division Management and Job Postings.

Defendant has responded to Request for Production No. 32. No further response is required.

### Request for Production No. 33

Request No. 33 is in two parts. At issue in this Request for Production is Subpart A, seeking all documents containing inputs on how Plaintiff and several other employees were "mapped," a term which apparently means assigned to a job level.

Defendant states that it had produced documents describing the TCP job series and job competency model which includes Plaintiff's job level of TCP-2. In her Motion to Compel, Plaintiff argues that this mapping occurred without her knowledge, and that she asked for "the inputs specific to her that managers used to map her into a low level within this model, as compared to her comparators". [Docket No. 73, p. 22, filed in 05cv1082 WJ/RLP].

Although not totally clear, it appears that Plaintiff now seeks documents prepared by her managers which were used in the drafting and implementation of the TCP category.

Defendant has responded to Request for Production No. 33, and no further response to that request is required. Plaintiff may serve on additional Request for Production seeking documents prepared by her managers which were used in the drafting and implementation of the TCP category.

**Request for Production No. 35**

Request No. 35 seeks documents showing the salary ranges, including their minimum, maximum, market midpoints and other control points for all TCP levels. Defendant responded that no such documents existed. Plaintiff attached portions of the depositions of Jerome Garcia, and Belinda Padilla, both TTD managers. Mr. Garcia testified that the TCP model was not formally implemented, but was used as a guideline, while Ms. Padilla testified that there were "market bands" for the TCP series. There is no explanation of the term "market bands" in either the deposition excerpts or briefing submitted.

Defendant shall produce TCP "market bands" provided that term refers to a tangible item, and further pertains to salary ranges used in any way by Defendant in relation to salaries or wages.

**Request for Production No. 38**

Request for Production No. 38 asked for all documents, handwritten and electronic notes, and all other forms of documents consulted in response to the First Set of Interrogatories. Defendant responded by stating that these documents had been or would be produced. In her Motion to Compel, Plaintiff states that she as not received relevant e-mails, meeting notes, and other forms of documents. (Docket No. 73, p. 23, filed in 05cv1082 JW/RLP). In its Response, Defendant states that it has produced 950 pages of documents it consulted to answer Plaintiff's discovery requests, including all notes and e-mails it could reasonably locate.

Defendant has responded to Request for Production No. 38. No further response is required at this time.

**IV.  Supplemental Discovery Responses**

The dispute over Defendant's supplemental discovery responses pertains to two Requests

for Production, Nos. 3 and 8. Defendant objected to these Requests while providing certain documents in relation to them. Plaintiff admits that she missed the deadline for objecting to Defendant's responses. [Docket No. 73, p.1, filed in Civ. No. 05-1082 WJ/RLP].

Defendants subsequently supplemented the responses to Requests No. 3 and 8 apparently seeking additional documentation.

The court will not entertain a Motion to Compel with regard to Requests No. 3 and 8. Defendant has responded to those requests, and except for supplementation required by F.R.Civ.P. Rule 26(e), no further answer is required.

**IT IS THEREFORE ORDERED AS FOLLOWS:**

Plaintiff's Motion to Compel as it related to Defendant's **Responses to Requests for Admission** is **Denied.**

Plaintiff's Motion to Compel as it relates to **Interrogatories Nos. 2, 3, 5, 6, 8, 9, 10, 11, 12, 13, 14 and 15** is **Denied**.

Plaintiff's Motion to Compel as it relates to **Interrogatory No. 17** is **Granted.** Defendant shall have until **October 9, 2007** to serve upon Plaintiff an answer to Interrogatory No. 17, stating its rationale for placing Mr. Canuteson in a project leader position over Plaintiff and the reasons for not permitting Plaintiff to compete for that job.

Plaintiff's Motion to Compel as it relates to R**equests for Production No. 32, 33 and 38** is **Denied**.

Plaintiff's Motion to Compel as it relates to **Request for Production No. 30** is **taken under advisement.** Defendant shall have until **October 9, 2007** to submit to the court an affidavit describing its search efforts to date, stating the job title of every employee consulted and the number

of hard copy or computer files searched. The affidavit shall state how a wider search for the documents requested could be made, stating the number of employees and computers involved, the individual or individuals who would be responsible for making such a search, and the cost in time and money of making such a search.

Plaintiff's Motion to Compel as it relates to Defendant's **Supplemental Responses to Requests for Production No. 3 and 8** is **Denied.**

Ruling on Plaintiff's Motion to Compel as it relate to **Interrogatories No. 1, 7 16, 18, 19** and **Requests for Production 31 and 34** is deferred until such time as Plaintiff's Motion to Amend is addressed by the District Court.

**IT IS SO ORDERED.**

Richard L. Puglisi
United States Magistrate Judge